UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KRISPY KRUNCHY FOODS LLC,

        Plaintiff,

  v.

SILCO LLC,

        Defendant.

Case No. 20-cv-293-pp

---

**ORDER GRANTING PLAINTIFF'S SECOND RENEWED MOTION FOR PARTIAL DEFAULT JUDGMENT (DKT. NO 19), ORDERING INJUNCTION AGAINST DEFENDANT AND AWARDING ATTORNEYS' FEES**

---

    On February 21, 2020, the plaintiff filed a complaint seeking damages and an injunction for seven trademark-related claims. Dkt. No. 1. The plaintiff brought claims under the Lanham Act, including trademark counterfeiting, trademark infringement, trademark dilution and false designation of origin. Dkt. No. 1 at 8-14. The complaint also raised state law claims for violation of Wisconsin's Deceptive Trade Practices Act, Wis. Stat. §100.18 and common law trademark infringement and unfair competition. Id. at 14–15. The defendant has not answered the complaint.

    On March 24, 2020, the plaintiff filed a request for entry of default, dkt. no. 7, and the Clerk of Court entered default the same day. On September 2, 2020, the plaintiff filed a motion for partial default judgment. Dkt. No. 12. The court denied that motion without prejudice on December 16, 2020. Dkt. No. 14. The court determined service was improper, because the plaintiff had not

1

effected service on an officer or a managing or general agent of the defendant. Id. at 4. On April 9, 2021, the plaintiff filed an affidavit of service, prepared by a process server and stating that the server had attempted to serve the defendant on March 5, 2021. Dkt. No. 15. Along with this affidavit, the plaintiff filed a renewed motion for partial default judgment. Dkt. No. 16. The plaintiff's counsel also filed a declaration under penalty of perjury, explaining the efforts made to serve the defendant. Dkt. No. 17. The court denied that motion, too, advising the plaintiff that it had not demonstrated that it had attempted to serve the plaintiff by publication. Dkt. No. 18 at 5–6. The court explained that it "[could not] grant default judgment until it [was] assured of proper service, and the plaintiff ha[d] not exhausted the avenues available to effect that service." Id. at 6.

The plaintiff since has filed a second renewed motion for partial default judgment. Dkt. No. 19. It says it has served the defendant through publication. Id. at 1. The plaintiff requests the injunctive relief it sought in the complaint. Id. at 11; dkt. no. 1 at 15–16. Specifically, the plaintiff requests that the court

> enter a permanent injunction (a) requiring Defendant to remove all Krispy Krunchy signage and point of sale materials and return them to Krispy Krunchy within ten (10) days of being notified of the granting of this Motion, (b) or, in the event that Defendant fails to comply with the Court's order after being notified, permitting Plaintiff to remove or have removed the Krispy Krunchy signage and point of sales materials from Defendant's property, and (c) prohibiting Defendant from using the KRISPY KRUNCHY® Marks.

Dkt. No. 19 at 11. The plaintiff also asks for an award of attorneys' fees and costs. Id.

2

The plaintiff does not seek summary judgment on its Wis. Stat. §100.18 claim or on its request for monetary damages. Id. at n.1. As to the latter, the plaintiff reserves its right to file a supplemental motion for default judgment. Id. The court cannot tell whether the plaintiff is intends to voluntarily dismiss the Wis. Stat. §100.18 claim.

The court will grant the plaintiff's motion for partial default judgment and grant an injunction against the defendant.

**I.  Entry of Default**

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

Under Federal Rule of Civil Procedure 4(h), plaintiffs may serve a corporate defendant "in the manner prescribed by Rule 4(e)(1)." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows the plaintiffs to serve an individual using the methods allowed by state law in the state where the federal district is located. Fed. R. Civ. P. 4(e)(1). Usually, Wisconsin requires plaintiffs to personally serve an officer, director or managing agent of a corporate defendant. Wis. Stat. §801.11(5)(a).

The plaintiff says that it initiated service by publication on March 18, 2022, and that a legal notice was published in the Milwaukee Journal Sentinel and JSOnline.com on March 18, March 26 and April 1, 2022. Id. at 3–4. It

3

asserts that its service by publication complied with the requirements of Wis. Stat. §985, because it was in a publication likely to give notice in the defendant's area, both in Milwaukee and online. Id. at 5.

"Before the district court may default a defendant, the plaintiff must prove service." Golub v. United States, 593 F. App'x 546, 548–49 (7th Cir. 2014); Fed. R. Civ. P. 4(l). Rule 4(h)(1)(A) permits the plaintiff to serve the defendant in the manner provided under Rule 4(e)(1), which permits parties to follow Wisconsin laws for service of process. Wis. Stat. §801.11(5)(b) says that if, after using reasonable diligence, the plaintiff cannot serve the defendant by other means, "then the summons may be served upon an officer, director or managing agent of the corporation or limited liability company by publication and mailing as provided in sub. (1)." Wis. Stat. §801.11(1)(c) and (5)(b) govern service by publication, and directs that publication be made as a class 3 notice under Wis. Stat. §985 and by mailing.

The defendant's registered agent is Makbul Sajan, whose office address is listed with the Wisconsin Department of Financial Institutions as 9040 West Silver Spring Drive, Milwaukee, Wisconsin 53225-2836. https://www.wdfi.org/apps/corpsearch/Details.aspx?entityID=S077396&hash=412113964&searchFunctionID=744987a5-fc85-4358-90e7-48a1d12f45e5&type=Simple&q=Silco+LLC. The Milwaukee Journal Sentinel is widely available in the greater Milwaukee area. The plaintiff has recounted in prior motions and filings the other efforts it has taken to try to serve the defendant, all of which have been unsuccessful.

4

The court finds that, having served the defendant by publication, the plaintiff has properly served the defendant under Wis. Stat. §§801.11(1)(c) and (5)(b).

## II. Plaintiff's Motion for Default Judgment

After the entry of default, the plaintiff may move for default judgment under Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id. However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id. Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b). On the other hand, such proceedings are unnecessary if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v Howard Pipe & Concrete Prods., Inc., 722 F2d 1319, 1323 (7th Cir. 1983)).

5

Case 2:20-cv-00293-PP   Filed 03/10/23   Page 5 of 17   Document 22

The plaintiff has brought both federal and state law claims against the defendant arising from the defendant's alleged unlawful use of the plaintiff's trademark. Dkt. No. 1. The plaintiff brings its claims under the Lanham Act for Trademark Counterfeiting and Trademark Infringement, Lanham Act, §32(l), 15 U.S.C. §1114(1), Trademark Dilution, Lanham Act §43(c), 15 U.S.C. §1125(c), and False Designation of Origin, Lanham Act §43(a), 15 U.S.C. §1125(a). Id. at ¶¶42–74. It also brings Wisconsin state law claims for violation of the Wisconsin Deceptive Trade Practices Act (Wis. Stat. §100.18), common law trademark infringement and common law unfair competition. Id. at ¶¶75–87. The plaintiff alleges that it has registered trademarks for its Krispy Krunchy Chicken Cajun Recipe logo design, as well as the term "KRISPY KRUNCHY CHICKEN" and "KRISPY KRUNCHY." Id. at ¶22. It alleges that the defendant, which sells prepared chicken and other related foods, used signage bearing the plaintiff's trademarks. Id. at ¶37. The plaintiff says that the defendant's services compete with its own, that the defendant's use of the marks is confusing and that it notified the defendant (or its predecessor) about the misuse of the trademarks. Id. at ¶¶38–41. The plaintiff asserts that it is entitled to injunctive relief and attorneys' fees and costs. Dkt. No. 19 at 7–11.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). "The purpose of such an injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." Faheem-El v. Klincar, 841 F.2d

712, 717 (7th Cir. 1988). To obtain a preliminary injunction, the plaintiff has the burden of establishing that (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction. Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012), (citing Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583, 589-90 (7th Cir. 2012)). If the movant establishes each of these elements, the court then must weigh two additional factors: the balance of harms and the effect of the injunction on the public interest. Id. The balance of harms requires further weighing of the harm to the plaintiff if preliminary injunctive relief is erroneously denied versus the harm to the defendant if the injunction is erroneously granted. Id.

### A. Likelihood of Success on the Merits

While the Seventh Circuit made clear that a moving party is not required to show that it will definitely win the case in order to obtain injunctive relief, the moving party must make at least a "strong" showing. Ill. Republican Party v. Pritzker, 973 F.3d at 760, 762-63 (7th Cir. 2020) (citing Nken v. Holder, 556 U.S. 418, 434 (2009)). A "strong" showing "normally includes a demonstration of how the applicant proposes to prove key elements of its case." Id. at 763.

> 1. *Count I & II: Trademark Counterfeiting & Infringement, 15 U.S.C. § 1114(1)*

The plaintiff's claims for trademark counterfeiting and infringement under the Lanham Act require "(1) that [the plaintiff's] mark be validly registered and (2) that [the defendant's] use be likely to cause confusion among

7

consumers." Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 419 (7th Cir. 2019); Entertainment One UK Ltd. v. 2012 Shiliang, 384 F. Supp. 3d 941 (N.D. Ill. 2019) (applying the same test to the trademark counterfeiting and trademark infringement). When considering whether the marks were counterfeited, "the more pertinent question is whether the marks, not the goods, are substantially identical." H-D U.S.A., LLC v. SunFrog, LLC, 311 F. Supp. 3d 1000, 1027 (E.D. Wis. 2018).

The plaintiff has demonstrated that its marks are validly registered, dkt. no. 1 at ¶22, leaving the court to consider only whether the defendant's usage is likely to cause confusion. In that regard, the plaintiff has alleged that the marks used by the defendant were identical to its own. Id. at ¶37.

When considering whether the defendant's use is likely to cause confusion among consumers, the court asks "whether consumers who might use either product would likely attribute them to a single source." Uncommon, 926 F.3d at 425. This requires consideration of seven factors: "(1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to "palm off" its product as that of another." Id. While no one factor is dispositive, usually "the similarity of the marks, the defendant's intent, and actual confusion" are the most important. Id. (quoting Packman v. Chi. Tribune Co., 267 F.3d 628, 643 (7th Cir. 2001)).

The plaintiff alleges that the defendant is using the exact same mark as the plaintiff's to sell competing food products, dkt. no. 1 at ¶¶37–38, satisfying the first two prongs. It also alleges that the defendant provides those products "for the same customers in overlapping geographic regions within Wisconsin," satisfying the third prong. Id. at ¶38.

As to the fourth prong, the court can infer that customers would use little attention and care when picking out inexpensive, ready-made food products. Uncommon, 926 F.3d at 426. ("[I]f a product is widely accessible and inexpensive, it follows that consumers will exercise little care in discriminating among product makers."). For the fifth prong, the plaintiff has alleged that its marks are widely accepted and recognized by both the public and the industry. Dkt. No. 1 at ¶32.

The plaintiff has not pointed to any instances of actual confusion, but as to the seventh and final prong, it has alleged that the defendant intended to sell its products using the plaintiff's goodwill built alongside their marks. Id. at ¶58.

Because six of the seven prongs favor the plaintiff, and the marks are identical, the court finds that the plaintiff has adequately demonstrated a strong likelihood of success on its trademark counterfeiting and infringement claims.

2. *Count III: Trademark Dilution, 15 U.S.C. § 1125(c)*

Under 15 U.S.C. §1125(c),

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against

> another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

For a plaintiff to succeed on a claim for trademark dilution, the trademark in question must be "famous." See Rice v. Reading for Edu., LLC, No. 19-C-245, 2019 WL 4933420, *3 (E.D. Wis. Oct. 7, 2019); Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1372 (Fed. Cir. 2012) ("A threshold question in a federal dilution claim is whether the mark at issue is 'famous.'"). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. §1125(c)(2)(A). This definition excludes marks of "niche fame." Top Tobacco, L.P. v. N. Atl. Operating Co., Inc., 509 F.3d 380, 384 (7th Cir. 2007).

The plaintiff alleges that its marks are famous and that the defendant began using the marks with its food products after the plaintiff's marks had attained that fame. Dkt. No. 1 at ¶61. It also asserts that the consuming public recognizes its marks and associates them with high-quality products. Id. at ¶32. Finally, the plaintiff alleges that the defendant's use of the marks is likely to dilute the strength of the mark. Id. at ¶62. Taking these allegations as true, as it must for the purposes of default judgment, and because the court already has decided that the defendant used the plaintiff's marks, the court finds that the plaintiff has shown a strong likelihood of success on the merits of its trademark dilution claim.

### 3. *Count IV: False Designation of Origin, 15 U.S.C. §1125(a)*

Section 43(a)(1) of the Lanham Act states,

> Any person who, on or in connection with any goods or services, … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities [shall be liable in a civil action].

15 U.S.C. §1125(a). Essentially, "a plaintiff making a claim of false designation of origin must show that the mark is entitled to protection as a trademark . . . and that the false designation of origin creates a likelihood of confusion." Rust Env. & Infrastructure, Inc. v. Teunissen, 131 F.3d 1210, 1214 (7th Cir. 1997) (citation omitted).

The plaintiff contends that the images and language used by the defendant are trademarked. Dkt. No. 1 at ¶22. The plaintiff alleges that the defendant's use of the marks is likely to cause confusion and deceive consumers regarding the origin of the products. Id. at ¶68. It asserts that "[c]onsumers observing Defendant's products and fast-food services in the marketplace are likely to believe that those services are sponsored by, associated with, or otherwise affiliated with [the plaintiff], when they are not." Id. And the court has determined that the plaintiff has demonstrated the defendant's use of the marks is likely to cause confusion.

11

Taking the plaintiff's allegations as true, the court concludes that there is a strong likelihood that the plaintiff will succeed on its false designation of origin claim.

4. *Count VI: Common Law Trademark Infringement*

Wisconsin common law trademark infringement claims require essentially the same analysis as Lanham Act claims for trademark infringement. Children's Med. Grp., Inc. v. Lake Cty. Pediatrics, S.C., 417 F. Supp. 3d 1152, 1156 (E.D. Wis. 2019) (citing Meridian Mut. Ins. Co. v. Meridian Ins. Grp., 128 F.3d 1111, 1115 (7th Cir. 1997)). Because the plaintiff has established a strong likelihood of success on its Lanham Act trademark infringement claim, it has done the same regarding its common law infringement claim.

5. *Count VII: Common Law Unfair Competition*

Wisconsin common law unfair competition claims require essentially the same analysis as Lanham Act claims for trademark infringement. See Ritter v. Farrow, 355 Wis. 2d 577, *11 (Wis. Ct. App. 2014) (table); see also A&L Indus., LLC v. Weaver Enterprises, Ltd., No. 20-cv-552-slc, 2021 WL 3856745, *8 (W.D. Wis. Aug. 30, 2021) ("The parties' state common law claims of infringement and unfair competition have the same elements and threshold requirements as their federal counterparts."). The plaintiff has shown a strong likelihood of success on the merits of its trademark infringement claim.

B.  <u>Adequate Remedy at Law</u>

As the moving party, the plaintiff bears the burden of demonstrating that no adequate remedy at law exists outside of a preliminary injunction. <u>Promatek Indus., Ltd. v. Equitrac Corp.</u>, 300 F.3d 808, 813 (7th Cir. 2002). This requires only that the plaintiff demonstrate that "any award would be 'seriously deficient as compared to the harm suffered.'" <u>Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.</u>, 858 F.3d 1034, 1046 (7th Cir. 2017) (quoting <u>Foodcomm Int'l v. Barry</u>, 328 F.3d 300, 304 (7th Cir. 2003)).

There is likely no effective way of calculating the plaintiff's damages from the defendants' trademark claims. <u>See</u> <u>In re A & F, Inc. II</u>, 742 F.3d 763, 769 (7th Cir. 2014) ("[I]njuries to reputation and goodwill are nearly impossible to measure.") (citing <u>Abbott Labs v. Mead Johnson & Co.</u>, 971 F.2d 6, 16 (7th Cir. 1992)). The court finds that there is no adequate remedy of law other than a preliminary injunction.

C.  <u>Irreparable Harm</u>

While alleged irreparable harm need not occur before a court may grant injunctive relief, there must be more than a mere possibility. <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 633 (1953); <u>Bath Indus., Inc. v. Blot</u>, 427 F.2d 97, 111 (7th Cir. 1970). Put another way, the irreparable harm must be *likely* to occur if no injunction is issued. <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 21–23 (2008).

Section 1116(a) of Title 15, a subsection of the Lanham Act, says that "[a] plaintiff seeking any injunction shall be entitled to a rebuttable presumption of

13

irreparable harm upon a finding of a [Lanham] violation." The defendant has not offered a rebuttal (or any response at all). Without an injunction, the defendant can continue to label its products as if they were the plaintiff's, injuring the reputation and goodwill of the plaintiff. The court finds that the plaintiff would suffer irreparable harm without an injunction.

D. Balance of Harms and the Public Interest

The court analyzes the balance of harms on a sliding scale: "'If the plaintiff is likely to win on the merits, the balance of harms need not weigh as heavily in his favor.'" Life Spine, Inc. v. Aegis Spine, Inc., 8 F.4th 531, 539 (7th Cir. 2021) (quoting Speech First, Inc. v. Killeen, 968 F.3d 628, 637 (7th Cir. 2020)).

The plaintiff has a strong likelihood of succeeding on all its claims and the court has no evidence or indication that the defendant will be harmed in any significant way by not being able to label its products with the plaintiff's trademarks. The court finds that the balance of harms tips heavily in favor of granting an injunction. The public has an interest in receiving the products they believe they are purchasing. The court is unaware of any public interest served by allowing one company to pass its products off as the products of another. The court finds that that the public interest also favors granting an injunction.

E. Injunction

The court will grant the plaintiff injunctive relief prohibiting the defendant from using the plaintiff's marks without the plaintiff's consent.

14

## III. Attorneys' Fees and Costs

Finally, the plaintiff requests attorneys' fees and costs from the defendant for litigating the case. Dkt. No. 19 at 8.

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. §1117(a). In determining whether this section of the Lanham Act is applicable to a specific case, courts within the Seventh Circuit apply the framework provided in the Supreme Court case Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545 (2014). LHO Chi. River, L.L.C. v. Rosemoor Suites, LLC, 988 F.3d 962, 965 (7th Cir. 2021) (LHO II) (citing LHO Chi. River, L.L.C. v. Perillo, 942 F3d 384, 387 (7th Cir. 2019) (LHO I)). Within the Octane Fitness framework,

> an "exceptional" case is simply one that stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

572 U.S. at 554.

The Seventh Circuit has identified several considerations that blend into this analysis: "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" LHO II, 988 F.3d at 965 (quoting LHO I, 942 F.3d at 386). The court is required to award attorneys' fees for intentional and knowing use of a mark or design, absent extenuating circumstances. 15 U.S.C. §1117(b)(1); see, *e.g.*,

15

Entertainment One, 384 F. Supp. 3d at 954 ("Given defendants' willful infringement , and the absence of extenuating circumstances, Plaintiff is entitled to reasonable attorneys' fees . . . .").

The plaintiff asserts that the case is exceptional because the defendant acted willfully. Dkt. No. 19 at 9. It also argues that "trademark infringement is considered willful where the defendant was put on notice and continued its infringing conduct." Id. (citing Microsoft Corp. v. Ram Distribution, LLC, 625 F Supp. 2d 674, 684 (E.D. Wis. 2008)). The complaint alleges as to each claim that the defendant's conduct was willful. Dkt. No. 1 at ¶¶47, 54, 64, 70, 82, 86. For the purposes of default judgment, the court must accept that the defendant's conduct was willful. The totality of the circumstances demand the same conclusion, because the plaintiff has alleged that the defendant knowingly is using the plaintiff's registered trademarks in an unlawful manner for financial gain. Because the plaintiff has alleged that the defendant's conduct is willful and the defendant, though it has been served, has not responded to that allegation, the plaintiff is entitled to reasonable attorneys' fees due to the defendant's willful conduct.

The court will award the plaintiff attorneys fees and costs. The court will require the plaintiff to file a detailed accounting of its legal work and costs.

## IV. CONCLUSION

The court **GRANTS** the plaintiff's motion for default judgment as to Counts I through IV and VI through VII. Dkt. No. 19.

16

The court **ORDERS** that the defendant must remove all Krispy Krunchy signage and point of sale materials and return them to the plaintiff within ten days of being notified of this order.

The court **FINDS** that the plaintiff is entitled to reasonable attorneys' fees under 15 U.S.C. §§1117(a) and (b). The court **ORDERS** that by the end of the day on **March 24, 2023**, the plaintiff must file with the court an itemized listing of the fees and costs it seeks and must serve a copy on the defendant.

The court **ORDERS** that by the end of the day on **March 24, 2023**, the plaintiff must file a status report, explaining how it intends to proceed on Count V (its Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18, claim) and its request for monetary damages.

Dated in Milwaukee, Wisconsin this 10th day of March, 2023.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**